Good morning. My name is Michael Kinkley. I'm an attorney for the Plaintiff Appellant. My co-counsel is Alan McNeil of Gonzaga University Legal Clinic. On the brief were Ian Stame, who was a Rule 9 intern, and my son Scott Kinkley, who's a young lawyer. We have basically four categories of argument today. The first is the Rooker-Feldman. On February 22, 2011, a state court judgment of dismissal with prejudice was entered in favor of my client. Just like in Exxon, the state court judgment was in favor of Exxon. It was in favor of our client. On 3-7-2011, the federal FDCPA complaint was filed. And nothing in that two weeks was alleged in the complaint. There was no action or inaction that was alleged to have occurred after the judgment was entered. Nor could there be, because the judgment was in favor of Mrs. Cannon. She was not a state court loser. She was not complaining of anything caused by the state court judgment as far as an injury leading to her FDCPA complaint. And that is the essence of Rooker-Feldman, as we know from Exxon and Lance v. Dennis. And, of course, before that, Noel v. Hall and Kosygin, I believe it was. First comes Noel and then comes Kosygin. Right, and both of those were before Exxon. And I think I described that once in a paper I wrote as a beacon of light in the midst of mystification of Rooker-Feldman. Flattery will get you everywhere. Thank you. Those were excellent opinions, and most courts were getting it wrong. Judge Fletcher wrote that. Oh, I know that. As he mentioned, that was her choice. But the fact of the matter is... He wrote it on paper. The fact of the matter is there was a lot of confusion, and I'm so surprised that there is again confusion in Rooker-Feldman. I thought we were done with it. I spoke on it at a lecture in St. Louis and said, well, this Noel v. Hall explains it all. The next year or so, I spoke again in San Diego, and I said, look, Rooker-Feldman is done. Exxon says it's the judgment caused the injury. It's easy. Here we are again. So then it's not Rooker-Feldman, clearly. She's not a state court loser. The judgment didn't cause any injury. End of story on that one. So we have claim preclusion alleged. Well, the only way claim preclusion could apply... to have a look at that at that point and say, okay, listen, Rooker-Feldman doesn't apply. That was the basis of your decision. Now you've got claim preclusion, issue preclusion. God knows what else you have. Have a look. No, because he also said, and he didn't use precise language throughout, but he also said that the real reason was a basis of a settlement and because it's claim preclusion, because FDCPA was not raised as a defense. You have to look at the reconsideration. I thought I could go in. I joined this case at the reconsideration stage. By the way, I'd like to reserve five minutes. And I thought we could explain that there wasn't a settlement and so forth and it's not Rooker-Feldman. But what the judge said was not only Rooker-Feldman. He also said in the reconsideration that there's claim preclusion because FDCPA was not raised as a defense in state court, nor was it raised as a counterclaim. But, of course, it is not a compulsory counterclaim, nor is it a defense to a state court contract action. The FDCPA is an independent cause of action with different elements. So then we get to the issue preclusion, which is also read into Judge Sukho's opinion. But, again, the argument there is that our client somehow is precluded because the issue of whether she owed the debt was determined by the state court. That's true. The state court did determine it in her favor. So issue preclusion works her way. And what I think we need is a strong opinion once again explaining Rooker-Feldman, once again explaining issue preclusion when it's in the favor of the person who won the case, can't be used against them, and once again explaining, as many, many courts have, but not yet the Ninth Circuit, that FDCPA is not a compulsory counterclaim to a state court contract collection action, nor is it a defense to a state court contract collection action. The district courts... So wouldn't it be a compulsory counterclaim depending on the rule in the state court? Well, we're in Washington, and I'm not familiar with every state. I'm licensed in Idaho, and in either of those states would it be. And the reason is I don't think it would be in most states. The reason being is that the elements are different. You don't have to prove if it's a debt, meaning a consumer debt, in a contract case. You don't have to prove if the person regularly collects debts. I got that, but what I want to say is if we were to say there's not a compulsory counterclaim, that might be useful, but it will be of somewhat limited utility because under 1738, the race to decada rules, both claim and issue preclusion, are dependent on what the state court rule is. So this is a question of whether it's not some federal rule or compulsory counterclaim. It's Washington state court rule. Absolutely. Yeah, it's a question of under Washington rule, which is very similar to the federal rule if I believe it's the same. The words are the same. The words are the same. And how would they interpret it? I mean, if you look at the case law, you are going to have to go state by state at some point. But you could give guidance at this point because the rules are so similar. They're all based on the federal model rule. And so it really can't be, and it doesn't make sense, because do you really want every contract, collection, consumer case in state court, the defendants all raising the fact of the actions of the debt collector and bringing it, at which case the plaintiff would then remove the FDCPA portion to federal court? It's kind of a nonsensical way of approaching this problem. It is not the appropriate place. Would the plaintiff be able to remove based on the federal defense? Wrong. No, that's right. I actually argued that six weeks ago in the Sixth Circuit. So, no, a counter-defendant cannot remove. You're right. I'm sorry. I don't mean to be so great. No, you're absolutely right. I was just arguing that six weeks ago. That's embarrassing because you're precise. But in any case, you do not want defendants coming in and saying, you want them saying, I don't know the contractor, I do. You don't want them coming in and saying, the conduct and the way you've tried to collect this contract defends my contract case that you're bringing against me. It makes no sense. I'm down to four minutes. You want to start from the other side? You've got some time. Good morning. May it please the Court. I'm Carl Huber, and I represent Spokane Merchants Association. Your Honor, I think counsel's argument is built on a faulty premise. Ms. Cannon was not the state court winner. She was a state court loser. She was not the prevailing party. The underlying lawsuit was filed by North Point, which was the nursing home facility, against Ms. Cannon seeking damages for breach of contract. Ms. Cannon answered the complaint and asserted her defense of, I don't owe the debt. The case went to trial, albeit without Ms. Cannon, because neither she nor her attorney showed up. But there was testimony presented at trial, there were findings made at trial, and a judgment was entered from trial. The judgment was for $1,628. And I submit that when you go to trial, or when your case goes to trial, and you wind up with a judgment against you. The judgment was $1,619 for what? Your Honor, that's one of the confusing parts. The judgment, I believe, was $1,628. Whatever, $1,628. That was for attorney's fees and interest accrued. There was not a principal amount, because during the pendency of the case that amount had been paid. But under the contract, there was still provision for fees and costs and interest. Where the confusion is, is there was a subsequent order entered for $1,619, and that was a terms assessment that was imposed when a subsequent motion to vacate the judgment was filed. Even if we were to agree with you that she is not a winner, I'm not sure I do, but even if we were to agree with you that she's not a winner for purposes of Rooker-Feldman, Noel versus Hall is written much more broadly than that. Exxon is written narrowly, but, of course, Noel versus Hall is the law we're following. Are you with me? Yes. So address Noel versus Hall rather than winners and losers. Well, I think the analysis of winners versus losers has to be in the context of what the party came away with. Yeah, I said I don't want to talk about winners and losers. I want to talk about Noel versus Hall. Is there a claim in her federal suit that she has been damaged by the state court judgment such that she is challenging that judgment, or is she after something else? That's the Noel versus Hall question. The only claim in her FDCPA is I don't owe the debt. They attempted to collect this debt from me that I do not owe, and that is precisely the defense that was asserted in the state court action. That was precisely the defense that was dismissed as part of the order of dismissal with prejudice, and I submit they're inextricably intertwined. They're the same argument. Well, if it's the same argument and she's already lost on that argument, the ordinary way you go about that is preclusion. Okay. And, Judge, we think that there are a number of ways to affirm Judge Circle's ruling here. I think Rooker-Feldman applies. I also think that his rulings on claim preclusion and even his discussion of res judicata, I think all of those concepts can and should apply here, but the reality is she has one claim, that is I don't owe the debt, and that was litigated and resolved and dismissed at the state court level. At the time that the state court said that she could vacate the judgment from the trial, my client had a $1,600 judgment against Ms. Cannon, and for her to retry it and assert her defense, she's going to have to pay $1,600 in terms. Well, but I thought that was for attorney fees on the dismissal. In other words, yeah, you got a judgment in a default sense. She wasn't there, and that judgment was vacated by the state court, correct? And then there was $1,619.50, which were attorney fees, that were a condition of dismissing your claim against her with prejudice. Isn't that correct? That's very close, Your Honor, and it's unfortunate that the numbers are so similar. The judgment from the trial, the $1,628, that was for attorney fees up until the date of the judgment. At the time that the state trial court ruled on the motion to vacate, there was an additional affidavit filed that says since that judgment, we have $1,619 in attorney fees. And what the trial court judge did in the state action was say, Counsel, you pay the $1,619, which was the attorney fees, after the judgment, and I'll vacate the first judgment, and you can go to trial on that. So arguably, Spokane Merchants was in the position where they had one judgment, they were going to get terms paid for the other, and there was a proposal made by counsel for Ms. Cannon that if they pay the $1,619, we'll have a global settlement and make this whole case go away. That included the claim, that included the defense. And the reference to that, it's Exhibit 16, which is an excerpt of Record 18, and I apologize, but I referred to that as ER 16 instead of Exhibit. I've got a question for you. A moment ago, you said, well, what she's asked, her argument in her federal suit is that your client sought to collect a debt that she didn't owe. Am I paraphrasing correctly what you said? Yes, Your Honor. I'm reading the complaint. First claim for relief. Defendant violated the FDCPA in the following ways, not limited to these. By falsely representing the character amount or legal status, by falsely representing service rendered or compensation which may be lawfully received, by taking legal action that cannot be taken, by using false representation to collect or attempt to collect the debt, by attempting to collect amount not expressly authorized by agreement. Second claim for relief. Defendant violated Washington law by communicating just an alleged claim who could not be reasonably expected to, by threatening to take action which could not take at the time the threat was made. Boy, that's a lot of stuff. I don't think that was all adjudicated in the state court. Judge, at the time that Ms. Cannon came in and moved to vacate the judgment from the trial, every one of those arguments was made. That was the basis for them coming forward to vacate the judgment. That was exactly the argument that was made. It was granted. And judgment was vacated. Right. And then subsequently... How did you prevail in that? We prevailed because we entered into a settlement agreement with them whereby the $1,619 was paid and both parties agreed... Who paid the money? The money was paid by Ms. Cannon's former attorney. Right, because he was the one that didn't show up. Their argument is it was a sanction against the attorney and it was levied against him, not her. Well, I don't think that is supported by the record. The sanction was against Ms. Cannon, but I agree with you that the facts would... You probably do a fair number of these debt collection cases, do you? I do, Your Honor. Yeah. I mean, often the complaint against the debt collecting agency is not that I don't owe the money. It is abusive tactics that violate the law in seeking to collect the money, and that's part of what's going on here. I mean, as I read that complaint,  rather than as to the existence of the debt. The argument that was made was that I do not owe the money because I signed as a response... No, I'm reading the complaint. Yes, Your Honor. And the federal complaint I've got in front of me charges, among other things, as a civil matter under the Debt Collection Act that there have been abusive tactics that can be abusive whether or not the money is owed. Well, Judge, I guess I do enough of these fair debt collection cases to recognize boilerplate complaints, and I submit to you that... It may turn out not to be valid. I got that part, but it's right there in the complaint. Well, I rely on the fact that all of those assertions come from the I don't owe the debt, and she agreed to dismiss that, and it was dismissed with prejudice. So, thank you, Your Honor. Okay, thank you. There's quite a bit of confusion on this case, so if I could just run through it real quickly. The probate lawyer thought the matter was resolved because the probate paid the underlying debt, so he didn't show up for trial. Judgment was entered, which included interest of $329 and prejudgment attorney fees of $1,299, total of $1,628. The clinic then became involved and said, wait a minute, this case has to be vacated, and in Washington law it was clear cut that it had to be. The district court judge said to the collection lawyer, jeez, you must have some post-judgment attorney fees. Aren't those around $1,600, wink, so to speak? In any case, the collection lawyer put in a bill for 1,600 post-judgment fees, which became the terms to vacate. Those terms were paid by the probate lawyer who failed to appear. The case was then set for trial. It wasn't an agreement to pay the terms and get a dismissal. There was never such an agreement. Read the order itself. It says, shall now be pending for trial once this amount is paid. So it was pending for trial. At that point, the plaintiff unilaterally under CR 41 has an absolute right, different than federal court where you have to get a judge's approval, but in state court, Washington court, absolute right to dismissal, and that's what the plaintiff did with no agreement. I'll yield 30 seconds to let Mr. Huber point to anything in the record which suggests that there was any agreement of any kind, and there wasn't. So what we have here at the end of the day is then a motion for dismissal. The lawyer calls up the intern and says, I'm going to dismiss it. The intern says, well, okay. The intern would have the right to an appearance on any presentation of judgment. In Washington, as a civility, we say, if I can't oppose your dismissal by right, I will approve the form, waive presentment, and that's what happened here. That's what they're claiming is an agreement, and it's not. There was never any agreement about anything. Now, Mrs. Cannon is the prevailing party because this case that said she owed a debt was dismissed with prejudice, which conclusively proves, as a matter of issue preclusion under Washington law, that she doesn't owe the debt. What was the trial going to be on this? The trial never happened. The trial would have been, absolutely, the trial would have been that she did not owe the debt, and she would have defended on the fact that the state nursing home law and federal nursing home law meant that she didn't owe the debt. She merely signed because her aunt and uncle were, unfortunately, somewhat incapacitated. And under federal law, you're allowed to sign that, but it doesn't make you financially responsible. So they would have defended. Now, Spokane merchants got a problem. They've got an aggressive clinic full of young interns that are going to come into court and say she can't possibly owe the debt because that's what they wrote in the motion to vacate. Spokane merchants now knows they're going to lose, so they just unilaterally dismissed it. And the intern said, well, you better do it with prejudice, don't you think? The lawyer said, yes. And there's a reason for that. The lawyer was accommodating because he slipped the words without costs into that order. Under Washington law, the attorney fees would have been defined as costs. So that's why he agreed to the words without prejudice. But the fact of the matter is, this is canon. That first judgment is gone. It was vacated. The second judgment was against Spokane merchants because it was their dismissal. It was with prejudice. It is issue preclusion conclusively finding that she didn't owe the debt, which is now an F-1 violation because there was no basis in law or fact for Spokane merchants to try to collect that. So it violates 15 U.S.C. 1692E and F-1. So as far as the Rooker-Feldman, she's not complaining something's wrong with state court judgment. It was a dismissal with prejudice in her favor. So as to the claim preclusion, the argument was, and, Judge, I wanted to get to something else real quickly because Judge Succo, at Appellant's Excerpt, page 5, is the motion for reconsideration. And there's another thing that's confusing in this case. The original order was strictly Rooker-Feldman. You're correct. When I asked him to reconsider, we went through all of the Rooker-Feldman, and he said, well, I still think it's Rooker-Feldman, but I'm also going to add the termination of a lawsuit by dismissal with prejudice for raised due to product purposes includes all claim, similarly all defenses. So what he was saying, it's an inclusion of the entirety. In other words, if I'm going to defend an action, I have to raise all of my defenses that are defenses to that claim. I can't later bring a third-party action because of that. I can't split my causes of action, in other words. Secondly, if I have a compulsive counterclaim, compulsory counterclaim, I guess sometimes it's compulsive as well, but compulsory counterclaim, I have to raise that. So in essence, what Judge Succo said at his order, at Appellant's Excerpt, Page 5, Amended Order Denying Motion for Reconsideration, is that the failure to raise FDCPA as a defense and the failure to raise FDCPA as a counterclaim mean that she is barred from doing that. Now, the plaintiff, the defendant here, keeps arguing there was a settlement, and as I say, I'll yield by last 30 seconds. If he wants to point to you in the record. You're in debt by a minute already. You've got nothing to yield. I got 104. Oh, watch it. It's climbing. In any case, I yield the time I no longer have to Mr. Huber, but seriously, if he has a point in the record where there's anything, where there's a written settlement, which is required. Washington law, I'll finish, very indulgent, but Washington law requires either the settlement be entered on the record or in writing. Why? So people can't come later and claim there was a settlement that never happened. Okay, got it. Thank you. Would you like the 30 seconds that he gave you? I can have 10 seconds. Take them. Okay. ER 80, which is paragraph 415 of the FDCPA complaint where Ms. Cannon pleads that the state case was dismissed with prejudice upon agreement of the parties. That's Ms. Cannon's complaint. I appreciate the time, Mr. Kincaid. Thank you. Thank both of you. No, no. We've tried enough cases. We know how to read the record. Okay. I got it. Okay. We got it. Cannon v. Buchanan Merchants Association, thank you for your arguments, is now submitted for decision. We'll take a 10-minute break.
judges: Quist, Fletcher, Fisher